Charles **THURMOND**, and Hal **LaPray**, Plaintiffs, On Behalf of Themselves and All Others Similarly Situated.

v.

**COMPAQ COMPUTER CORPORATION,** Defendant.

No. 1:99CV0711(TH/WR).

United States District Court, E.D. Texas, Beaumont Division.

March 15, 2001.

Wayne A. Reaud, Reaud Law Firm, Beaumont, TX, Gilbert Irvine Low, Gary Neale Reger, Orgain Bell & Tucker, Beaumont, TX, L. DeWayne Layfield, Beaumont, TX, Charles Silver, Austin, TX, for Steven J. Goode, Hal LaPray.

George Michael Jamail, Wayne A. Reaud, Reaud Law Firm, Beaumont, TX, Gilbert Irvine Low, D. Allan Jones, Jack Potter Carroll, Gary Neale Reger, Orgain Bell & Tucker, Beaumont, TX, L. De-Wayne Layfield, Beaumont, TX, Charles

Silver, Austin, TX, for Tracy D. Wilson, Jr., Alisha Seale Owens.

Frank G. Jones, Fulbright & Jaworski, Houston, TX, for Toshiba America Information Systems, Inc.

Carl A. Parker, Parker & Parks, LLP, Port Arthur, TX, Barbara Wrubel, Sheila L. Birnbaum, Skadden Arps Slate Meagher & Flom LLP, New York City, Robert Quentin Keith, Keith Weber & Mosty, Johnson City, TX, David J. Beck, Beck Redden & Secrest LLP, Houston, TX, for Compaq Computer Corp.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT ON SECTION 1030 DAMAGES [1]

HEARTFIELD, District Judge.

### I. INTRODUCTION

Before the Court are: (1) *Defendant Compaq Computer Corporation's Motion to Dismiss Plaintiffs' Fourth Amended Original Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (Doc. No. 283); (2) *Defendant Compaq Computer Corporation's Motion to Dismiss Plaintiffs' Fifth Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim* (Doc. No. 368); (3) *Defendant Compaq Computer Corporation's Supplement to its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim or, alternatively, Compaq's Motion for Summary Judgment on Plaintiffs' Claim under the Computer Fraud and Abuse Act* (Doc. No. 428); and (4) *Defendant Compaq Computer Corporation's Motion for Summary Judgment on Plaintiffs' Breach of Warranty Claims and 1030 Damages* (Doc. No. 389.) [2] Having considered the arguments of counsel, the summary judgment evidence, and the applicable law, the Court finds that neither Charles Thurmond, Hal LaPray, Tracy D. Wilson, Jr., nor Alisha Seale Owens has offered sufficient evidence of "damage" to maintain a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

### II. BACKGROUND AND PROCEDURAL HISTORY

On October 31, 1999, Plaintiffs Charles Thurmond and Hal LaPray filed this class action lawsuit on behalf of themselves and all others similarly situated against Compaq Computer Corporation ("Compaq").[3] In their class complaint, Plaintiffs allege Compaq "designed, sold, manufactured, transmitted or created" certain computers that contain floppy diskette controllers ("FDC") with infected FDC microcode. (Doc No. 353 at 1.) What is an FDC?

The FDC directs the transfer of data from the floppy disk drive to the computer's memory and vice versa. For example, each time the Court saves this opinion to floppy disk the data travels along the computer's bus system to the FDC.[4] The FDC then writes the data to a designated location on a floppy disk ("write operation"). "If a defective FDC is made to wait a few microseconds too long, the FDC can write the delayed data as the first byte of the next physically adjacent data sector of a

---

1. The Court's Memorandum Opinion and Order supplements the earlier Order (Doc. No. 497), dated March 7, 2001.

2. Because the arguments in Compaq's motions overlap considerably, the Court consolidates the submissions for consideration.

3. Plaintiffs subsequently added Tracy D. Wilson, Jr. and Alisha Seale Owens (collectively, "Plaintiffs"). (*See* Doc No. 123.)

4. The data travels along the bus system one byte at a time. A "byte" is an eight-bit segment of data. In typical computer usage, it usually represents one character such as "A" or "7" or "z."

floppy diskette and destroy or 'zero out' the remainder of the data in that sector or transfer an incorrect number of bytes." (*Id.* at 10.) Plaintiffs term this condition a "boundary error." (*See id.*) The likelihood of boundary errors increased with the advent of multitasking computers; this in turn "aggravated the severity of the problem caused by infected FDCs." (*Id.*) Ordinarily, the FDC will detect delays ("underruns" or "overruns") during a write operation, and trigger a flag that notifies the control program to rewrite the data correctly. In this case, Plaintiffs allege the defective FDCs in certain Compaq computers are incapable of detecting boundary errors. (*See id.*) Plaintiffs allege Compaq's "infected FDCs instead verify erroneous results without an error status, resulting in the storage of corrupt data or the destruction of data without notice to the control program or operating system and without the operator's knowledge." (*Id.* at 9.)

In February, 2000, Compaq released a software patch ("SoftPaq") to remedy the alleged boundary errors caused by defective FDCs. (*See id.* at 15.) The SoftPaq was made available to computer owners by either internet download, CD ROM, image installation, or warranty service, and at least one Plaintiff actually installed the patch. (*See id.* at 16.) However, Plaintiffs allege the SoftPaq does not cure the defective FDCs, but instead, corrupts data and degrades computer performance. (*See id.* at 15.)

Plaintiffs maintain they suffered damages as a result of Compaq "distributing, selling, or otherwise transmitting" allegedly infected FDCs and the SoftPaq. (*Id.* at

20.) Moreover, Plaintiffs allege Compaq's conduct violates the CFAA, 18 U.S.C. § 1030. (*See id.*) Based on these allegations, Plaintiffs bring this civil action and request monetary damages as provided by 18 U.S.C. § 1030(g). (*See id.*)[5] In addition, Plaintiffs seek a declaratory judgment that Compaq's conduct violates 18 U.S.C. § 1030. (*See id.* at 23.) Finally, Plaintiffs assert state law claims for breach of contract, breach of warranty, and revocation of acceptance under U.C.C. § 2–608. (*See id.* at 21–23.)

On January 28, 2000, Compaq filed *Defendant Compaq Computer Corporation's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim.* (Doc. No. 11.) In its initial motion, Compaq argued that Plaintiffs' claim under the CFAA could not support federal subject matter jurisdiction. The Court disagreed and denied Compaq's motion on February 28, 2000. (Doc. No. 71.) Further, the Court noted "Compaq's 'motion to dismiss' raises matters outside the pleadings and is, in fact, a premature motion for summary judgment." (*Id.*)

Months later, Compaq filed *Defendant Compaq Computer Corporation's Motion to Dismiss Plaintiffs' Fourth Amended Original Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim.* (Doc. No. 283.) Plaintiffs subsequently amended their complaint (*see* Doc. No. 353), at which time Compaq filed *Defendant Compaq Computer Corporation's Motion to Dismiss Plaintiffs' Fifth Amended Original Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim.* (Doc. No. 368.)[6] In its

---

**5.** Section 1030(g) allows for injunctive relief as well; however, Plaintiffs dropped their claim for injunctive relief on February 26, 2001. (*See* Doc. No. 413.)

**6.** As noted, Compaq also filed *Defendant Compaq Computer Corporation's Supplement to its*

*Motion to Dismiss Plaintiffs' Fifth Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim or, alternatively, Compaq's Motion for Summary Judgment on Plaintiffs' Claim under the Computer Fraud and Abuse Act.* (Doc. No. 428.)

new motions, Compaq urges the Court to reconsider its earlier denial of Compaq's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim.[7] Again, Compaq argues Plaintiffs' CFAA claim cannot support federal subject matter jurisdiction. In the alternative, Compaq moves the Court to dismiss Plaintiffs' federal claim on the merits. Additionally, Compaq filed *Defendant Compaq Computer Corporation's Motion for Summary Judgment on Plaintiffs' Breach of Warranty Claims and Section 1030 Damages.* (Doc. No. 389.) In its motion, Compaq urges the Court to grant summary judgment on Plaintiffs' section 1030 claim since Plaintiffs cannot satisfy the requisite "damage" element of 18 U.S.C. § 1030(a)(5)(A). (*See id.*) For the reasons discussed below, the Court grants Compaq's Motion for Summary Judgment on Section 1030 Damages.

### III. Jurisdiction and Venue

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 since Plaintiffs' civil action arises under the laws of the United States—specifically, 18 U.S.C. § 1030. Furthermore, the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a). Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this judicial district and Compaq does business in this judicial district.

---

7. The arguments in Compaq's Motion to Dismiss Plaintiffs' Fourth Amended Complaint (Doc. No. 283) are incorporated by reference in Compaq's Motion to Dismiss Plaintiffs' Fifth Amended Complaint (Doc. No. 368.)

### IV. Legal Standards

#### A. Fed. R. Civ. P. 12(b)(1)

A district court's federal question jurisdiction is limited to cases arising under the Constitution, a federal law, or a treaty. 28 U.S.C. § 1331. However, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *accord Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984). "Ordinarily, where a jurisdiction issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). In such cases, the district court may dismiss a plaintiff's claim based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Clark v. Tarrant County, Texas,* 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

 However, where issues of jurisdiction and substance are intertwined "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate." *Roberts,* 812 F.2d at 1177.[8] Why? As the Supreme Court instructed in *Bell v. Hood:* "Whether the complaint states a cause of action on

---

8. "The questions of subject matter jurisdiction and the merits will normally be considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Clark,* 798 F.2d at 742 (citing *Sun Valley Gas v. Ernst Enter., Inc.,* 711 F.2d 138, 139 (9th Cir.1983)).

which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Therefore, if federal jurisdiction and the merits of a plaintiff's claim are intertwined, then the district court should not dismiss under Rule 12(b)(1) unless an exception applies. *Clark*, 798 F.2d at 742 (citing *Bell*, 327 U.S. at 682–83, 66 S.Ct. 773). What are the exceptions? The Court may dismiss Plaintiffs' CFAA claim if it "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or . . . is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83, 66 S.Ct. 773; *accord Clark*, 798 F.2d at 742 (holding that if jurisdiction and the merits are intertwined, then the case "should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is immaterial or is wholly insubstantial and frivolous"). Otherwise, the Court may assume jurisdiction and determine "the relevant jurisdictional facts on either a motion going to the merits or at trial." *Roberts*, 812 F.2d at 1178 (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)).

As noted, Compaq urges the Court to dismiss Plaintiffs' complaint for lack of federal subject matter jurisdiction. (*See* Doc. No. 368.) Specifically, Compaq contends Plaintiffs' claim under 18 U.S.C. § 1030(a)(5)(A) is "fatally defective because Plaintiffs have not (and cannot) demonstrate a 'transmission' that 'intentionally' 'caused damage' 'to a protected computer.'" (*Id.* at 2.) Compaq's argument fails to recognize that Plaintiffs' ability to demonstrate the elements of section 1030(a)(5)(A) is central to the merits of Plaintiffs' civil action as well. That is, 18 U.S.C. § 1030 "provides both the basis of federal court subject matter jurisdiction and the cause of action." *Clark*, 798 F.2d at 742. Therefore, the Court cannot dismiss Plaintiffs' claim for lack of subject matter jurisdiction unless it finds that the claim is "immaterial" or "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83, 66 S.Ct. 773. Not surprisingly, Compaq also argues that Plaintiffs' claim under the CFAA is "plainly unsubstantial" and "obviously without merit." (Doc. No. 283 at 7.) To the contrary, Plaintiffs' CFAA claim sparked months of intense discovery and litigation.[9] Management of this case required the support of two chambers, the research of three law clerks, and the judicial assistance of a magistrate judge.[10] Would the Court go to such measures if Plaintiffs' claim was frivolous? Of course not. Thus, the Court assumes subject matter jurisdiction over Plaintiffs' claim arising under 18 U.S.C. § 1030, and now turns to Compaq's 12(b)(6) motion.

## B. FED. R. CIV. P. 12(b)(6)

Dismissal of an action is appropriate where the complaint fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). Several well settled principles guide the 12(b)(6) inquiry.

When considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accepting as true the material allegations in the complaint as well as any reasonable inferences to be drawn therefrom. *Kaiser*

9. "Federal judges today face cases involving complicated statutes and factual assertions, many of which straddle the intersection of law, technology, and the physical, biological and social sciences." Chief Justice Rehnquist's 2000 Year–End Report on the Federal Judiciary.

10. The Court referred all pretrial matters in this case to United States Magistrate Judge Wendell C. Radford. As always, the Court appreciates Judge Radford's insight and the assistance of his staff.

*Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Rule 12(b)(6) does not countenance dismissal of an action based upon a judge's disbelief in the veracity of the pleaded facts. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The 12(b)(6) methodology requires the Court to determine whether the facts—which are admitted as true for the purposes of the motion—state a valid claim for relief. *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995). This is not to say that the Court should consider all pleaded facts, as neither conclusory allegations nor unwarranted deductions are admitted as true. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

General allegations suffice at the pleading stage since it is presumed that general allegations embrace those specific facts necessary to support the claim. *National Org. for Women v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). The Federal Rules do not compel the plaintiff to set out in detail the facts upon which the claim is based. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To the contrary, the rules contemplate notice pleading, requiring nothing more than a "short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

As a practical matter, a 12(b)(6) dismissal should only be granted where the plaintiff pleads himself out of court on the face of the complaint. 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (2d ed.1990). It must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Whether recovery appears remote or unlikely is irrelevant to the 12(b)(6) inquiry, and therefore, a complaint should never be dismissed merely because the Court doubts the plaintiff will ultimately prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, a 12(b)(6) dismissal is a disfavored means of disposing of a case. *Kaiser Aluminum,* 677 F.2d at 1050.

In this case, Compaq's 12(b)(6) motion raises matters outside the pleadings. The Court has discretion either to consider or reject these matters when making its 12(b)(6) determination. FED. R. CIV. P. 12(b). Should the Court decide to consider matters outside the pleadings, then Rule 12(b) provides:

> "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given *reasonable opportunity* to present all materials made pertinent to such a motion by Rule 56."

FED. R. CIV. P. 12(b) (last sentence) (emphasis added). Thus, the Court cannot consider matters outside the pleadings unless it converts Compaq's 12(b)(6) motion to one for summary judgment. *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir.1996).

The Court elects to look beyond the pleadings and treat Compaq's 12(b)(6) motion as one for summary judgment under FED. R. CIV. P. 56. Furthermore, the Court finds that notice of its intention to convert Compaq's 12(b)(6) motion is not warranted in this instance. Plaintiffs had a "reasonable opportunity" to present summary judgment evidence in their response to Compaq's Motion for Summary Judgment on Section 1030 Damages. (*See*

Doc. No.470.) [11] Indeed, the Docket Control Order provides that "in this particular case 'discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of litigation.'" (Doc. No. 82 at 2) (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D.Cal.1990); citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.12 (1995)). Plaintiffs actively engaged in discovery and concede that a "great deal of merits discovery took place." (Doc. No. 470 at 40.) [12]

### B. FED. R. CIV. P. 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Id.* at 247–48, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. If the evidence is such that a reasonable fact-finder could not find in favor of the nonmoving party, summary judgment should be granted. *Id.*, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. 1348. The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Id.* However, to meet its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting FED. R. CIV. P. 56(e)).

If the nonmoving party fails to make a sufficient showing of an essential element of a claim to which it has the burden of proof at trial, then the moving party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party need not negate the elements of the nonmoving party's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Rather, the moving party need only "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

---

**11.** The deadline for filling dispositive motions (including summary judgment motions) in this matter was January 12, 2001. Plaintiffs' deadline to respond was February 19, 2001. (*See* Doc. No. 393.)

**12.** To date, discovery in this matter has yielded millions of pages of documents, the deposition testimony of numerous witnesses, and answers to countless interrogatories. The sealed documents alone attest to the amount of discovery conducted.

Mindful of these considerations, the Court now turns to the substantive arguments of Compaq's motions.

## V. Discussion

"The widespread and increasing use of computers by organizations of all types, and by individuals, engaged in interstate or foreign commerce or communication promises a large and increasing role for § 1030. Where misuse of a computer is to be attacked, both prosecutors and civil plaintiffs are likely to find it often a useful addition to the array of fraud statutes in title 18." [13] Compaq's motions raise several novel issues concerning the necessary elements of Plaintiffs' civil claim under the CFAA, 18 U.S.C. § 1030.

### A. Plaintiffs' Civil Claim under the CFAA

In their complaint, Plaintiffs contend Compaq distributed, sold, or otherwise transmitted infected FDCs and the Soft-Paq in violation of 18 U.S.C. § 1030(a)(5)(A). (*See* Doc. No. 353 at 20.) Specifically, Plaintiffs allege Compaq "knowingly caused and continues to cause the transmission of the FDC software program, code, and commands," (*Id.* at 11); and, as a result, "intentionally caused and continues to cause damage ... without authorization ... to protected computers in interstate commerce." (*Id.* at 13.) [14] As a result of Compaq's alleged violation, Plaintiffs maintain they are entitled to recover monetary damages to compensate them for their loss or damage as provided under 18 U.S.C. § 1030(g). (*See id.* at 20.)

Section 1030(a)(5)(A) of the CFAA imposes criminal sanctions on anyone who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). In 1994, Congress amended the CFAA and created a private right of action similar to that in section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). H.R. Conf. Rep. No.103–711, at Section 290001 (1994).[15] Section 1030(g) provides, in part: "Any person who suffers damages or loss *by reason of a violation* of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g) (emphasis added). As the emphasized language indicates, section 1030(g) limits recovery to those persons "who suffer damage or loss *by reason of a violation.*" 18 U.S.C. § 1030(g) (emphasis added). Put simply, absent a substantive violation, Plaintiffs have no civil cause of action.

 As noted, Plaintiffs predicate their civil claim on a violation of 18 U.S.C. § 1030(a)(5)(A). The elements of a civil claim under 1030(a)(5)(A) are as follows: (1) the knowing "transmission" of a "program, information, code, or command;" (2) the transmission is "to a protected computer;" and (3) the transmission causes intentional "damage without authorization." 18 U.S.C. § 1030(a)(5)(A). To maintain their civil claim under the CFAA (and ultimately

---

**13.** Richard Cooper, *Business Crime; Computer Fraud,* NAT'L L.J., February 26, 2001, at A11.

**14.** Plaintiffs submit the same allegations regarding the SoftPaq. (*See id.* at 15–17.)

**15.** Subsection 1964(c) of RICO provides, in part: "Any person injured in his business or

property *by reason of a violation* of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (emphasis added).

survive summary judgment), Plaintiffs must make a sufficient showing of all three elements under section 1030(a)(5)(A).[16] Of course, the language of section 1030(a)(5)(A) must be given the same meaning regardless whether a criminal prosecution or a civil action is brought. *See United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542, 63 S.Ct. 379, 87 L.Ed. 443 (1943).

■ There is no need for the Court to address every element of 18 U.S.C. § 1030(a)(5)(A) at this time.[17] Compaq's motion for summary judgement (*see* Doc. No. 389) only concerns the requisite "damage" element of section 1030(a)(5)(A). Specifically, Compaq argues that it is entitled to summary judgment since Plaintiffs have not incurred cognizable damages under the CFAA. (*See id.* at 38.) Therefore, it remains for the Court to determine whether Plaintiffs are required to show statutorily defined "damage" and, if so, whether Plaintiffs offer sufficient evidence of "damage" to maintain a claim under the CFAA, 18 U.S.C. § 1030(g).

## B. Plaintiffs' "Damage" under 18 U.S.C. § 1030(e)(8)

In their complaint, Plaintiffs allege they have suffered damage and loss as a result of the SoftPaq and infected FDCs "designed, manufactured, created, distributed, sold and marketed" by Compaq. (Doc. No. 353 at 10 & 16.) Compaq raises two objection to Plaintiffs' allegations in its motion for summary judgment. First, Compaq contends Plaintiffs cannot show an "impairment to the integrity or availability of data." (Doc. No. 389 at 39.) Second, Compaq argues Plaintiffs are unable to show "damage" that meets the statutory threshold amount of $5,000. (*See id.*) Under the CFAA, the term "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information that—

(A) causes loss aggregating at least $5,000 in value during any 1–year period to one or more individuals;

(B) modifies or impairs, or potentially modifies or impairs, the medical exami-

---

**16.** Obviously, proof of an indictment or conviction would conclusively establish the elements of section 1030(a)(5)(A); however, neither has occurred in this case. Moreover, Plaintiffs are not required to make such a showing. The purpose of § 1030(g) "would be largely defeated, and the need for [civil] damages as an incentive to litigate unjustified, if private suits could be maintained only against those already brought to justice." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 493, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (interpreting statutory elements of a civil claim under 18 U.S.C. § 1964(c)). Instead, Plaintiffs' burden of proof at trial is a preponderance of the evidence. Similarly, "for the plaintiff to prevail under RICO, he must prove by a *preponderance of the evidence* that the defendant's RICO violations were the 'proximate cause of injury.'" PATTERN JURY INSTRUCTIONS (CIVIL) FIFTH CIRCUIT § 8.1 (9th ed.1999); *Cf. Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989) (concluding that proof by

a preponderance of the evidence is sufficient to finding of liability in a civil RICO action); *United States v. Cappetto,* 502 F.2d 1351 (7th Cir.), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975) (holding that standard of proof is lower in a civil proceeding than it is in a criminal proceeding brought under RICO).

**17.** The Court has already written at length on the statutory interpretation of "transmission" in *Shaw v. Toshiba America Information Systems, Inc.,* 91 F.Supp.2d 926 (E.D.Tex.1999). In *Toshiba,* the Court refused to "hog-tie" the CFAA and Congress "through unnecessarily narrow interpretations of 'transmission.'" 91 F.Supp.2d at 935. The Court has no intention of changing its mind here. Therefore, the Court fully adopts and embraces its holding in *Toshiba* for purposes of this case. Accordingly, "Title 18 U.S.C. § 1030's 'transmission' includes the design, manufacture, creation, distribution, sale, transmission, and marketing of floppy-diskette controllers." *Id.* at 936.

nation, diagnosis, treatment, or care of one or more individuals;

(C) causes physical injury to any person; or

(D) threatens public health or safety."

18 U.S.C. § 1030(e)(8). As a preliminary matter, the Court must determine the appropriate method for interpreting the statutory definition of "damage" under the CFAA, 18 U.S.C. § 1030(e)(8).

To interpret statutory terms, the Court looks first to the plain language of the statute, examining "the statute as a whole, including its design, object, and policy." *New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 885 (5th Cir.1998); *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Kennedy v. Texas Utilities,* 179 F.3d 258, 261 (5th Cir.1999). "This Court defines particular terms with reference to the specific context in which they are used; and it looks to the arrangement of certain terms within the statute as a guide to their meaning." *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F.Supp.2d 926, 931 (E.D.Tex.1999) (interpreting the term "transmission" under 18 U.S.C. § 1030(a)(5)(A)) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340–41, 117 S.Ct. 843, 846–47, 136 L.Ed.2d 808 (1997); *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998), *cert denied,* 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999)). The Court is instructed to avoid, if possible, an interpretation that would produce "an absurd and unjust result which Congress could not have intended." *Clinton v. City of New York,* 524 U.S. 417, 429, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998). Thus, if the statutory language is susceptible to more than one reasonable interpretation, the Court should look beyond the statutory

text and examine the legislative history to glean congressional intent. *Uniroyal Chem. Co. v. Deltech Corp.,* 160 F.3d 238, 244 (5th Cir.1998); *see also Crandon v. United States,* 494 U.S. 152, 157–58, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (instructing that the design, object, and policy of criminal statutes upon which civil liability is predicated is important evidence to consider); *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) ("[W]hen assessing the reach of a federal criminal statute, we must pay close heed to the language, legislative history, and purpose in order to strictly determine the scope of the conduct the enactment forbids"). Should the Court depart from the plain meaning of the statute, it may look to official committee reports, conference reports, and contemporaneous statements by legislators and the committee that drafted the statute. *See North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 534, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); *In re CompuAdd Corp.,* 137 F.3d 880, 883 (5th Cir.1998).

■ Plaintiffs first argue they are not bound by the statutory definition of "damage" under 18 U.S.C. § 1030(e)(8). (Doc. No. 292 at 23.) Instead, Plaintiffs maintain that section 1030(g) provides an alternative to proving "damage" under 18 U.S.C. § 1030(e)(8). (*See id.*) Plaintiffs concentrate solely on section 1030(g)'s disjunctive "damage or loss" language. (*See id.*) According to Plaintiffs' interpretation, statutorily defined "damage" under section 1030(e)(8) is inapplicable if they plead "loss" rather than "damage." (*See id.* at 25.) "*The* $5,000 aggregate threshold comes into play only if one hangs one's hat solely on 18 U.S.C. § 1030(e)(8)(A) 'damage'." (*Id.*) The Court disagrees.[18]

---

18. If one "hangs one's hat," so to speak, on a violation of 18 U.S.C. § 1030(a)(5)(A), then one must offer evidence of statutorily defined "damage" as an essential element of the violation. Summary judgment is appropriate if one fails to prove "damage" under either (A), (B), (C), or (D) of section 1030(e)(8).

Regardless whether Plaintiffs plead "loss," "damage" or both, they are required to prove "damage" as an integral element of the violation alleged under 18 U.S.C. § 1030(a)(5)(A). By itself, 18 U.S.C. § 1030(g) merely provides Plaintiffs the right to bring a private cause of action. Thus, Plaintiffs' right to a civil claim is wholly dependent on proof of a substantive violation. Plaintiffs' interpretation, however, completely ignores this essential element of their civil claim. Moreover, Plaintiffs' interpretation contradicts "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) (citation omitted). If Plaintiffs need only demonstrate "loss" to bring a claim under the CFAA, then "by reason of a violation" impermissibly becomes superfluous language. Nowhere in the plain language of 18 U.S.C. § 1030(g) is "loss" defined .as an alternative to showing a substantive violation of the CFAA. The statute expressly mandates "loss *by reason of a violation.*" 18 U.S.C. § 1030(g) (emphasis added). This language is unambiguous. Therefore, Plaintiffs' interpretation of 18 U.S.C. § 1030 is unpersuasive.

■ Plaintiffs next argue they can prove statutory "damage" under section 1030(e)(8). (*See* Doc. No. 470 at 38.) As noted, section 1030(e)(8) defines "damage" as an "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). In their complaint, Plaintiffs allege that "[t]he damage caused by [Compaq] to Plaintiffs . . . includes impairment to the integrity and availability of data, programs, systems, and information." (Doc. No. 353 at 13.) Specifically, Plaintiffs allege their computers cannot store and retrieve data with 100% accuracy. (*See id.* at 20.) Further, Plaintiffs allege Compaq refused to replace or repair their computers when asked and, as a result, Plaintiffs were forced to use alternative computers. (*See id.*)

Plaintiffs' summary judgment evidence is sufficient to raise a genuine issue of fact on their claim concerning "impairment to the integrity or availability of data." In *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121 (W.D.Wash.2000), the district court examined the definition of "damage" under 18 U.S.C. § 1030(e)(8). There, the district court held that "[t]he unambiguous meaning of 'any' clearly demonstrates that the statute is meant to apply to *'any'* impairment to the integrity [or availability] of data." *Shurgard*, 119 F.Supp.2d at 1125 (emphasis added). The district court, however, found the word "integrity" to be ambiguous in the context of the statute. *See id.* After consulting WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed.1993), the district court concluded that "[t]he word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state." *Id.* Here, the Court notes that "availability" means "suitable or ready for use . . . at hand . . . readily attainable . . . accessible." WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1993).

Plaintiffs' sworn affidavits demonstrate an issue of fact regarding the "impairment to the availability of a system" (*i.e.* use of their personal computers). Each Plaintiff declares that upon learning of the allegedly defective FDC they stopped using their computers, and turned the computers over to their attorneys for investigation. (*See* Thurmond Aff. ¶ 8 at 2; LaPray Aff. ¶ 8 at 2; T. Wilson Aff. ¶ 13 at 3; Owens Aff. ¶ 14 at 4.) Furthermore, the deposition testimony of Plaintiffs raises questions of fact on the issue of "impairment to the

integrity of data." [19] Plaintiff Thurmond testified he had problems "backing up and reading to and from a floppy." (Thurmond Dep. at 38:22–23.) Likewise, Plaintiff LaPray testified he experienced data loss saving a legal motion to floppy disk. (LaPray Dep. at 53:1–54:7.) [20] Finally, Plaintiff Wilson testified he could not open up or read floppy disks. (T. Wilson Dep. at 32:21–25.) The Court finds that Plaintiffs have offered sufficient summary judgment evidence of "impairment to the integrity [and] availability" of their computers. 18 U.S.C. § 1030(e)(8). Still, Plaintiffs must show "damage" as described in subsections (A), (B), (C), or (D) of 18 U.S.C. § 1030(e)(8).

In their complaint, Plaintiffs allege Compaq's conduct resulted in "damage" that: "[i] caused and is causing loss aggregating at least $5,000 in value during any one-year period to one or more individuals; [ii] modifies, impairs, or potentially modifies or impairs, the medical examination, diagnosis, treatment, or care of one or more individuals; and [iii] threatens public health or safety." (Doc. No. 353 at 13.) [21] In addition, Plaintiffs allege that some putative class members use Compaq computers in "doctors offices, hospitals, banks, governmental installations, air traffic control systems, and medical laboratories." (*Id.* at 2.) Plaintiffs, however, offer no summary judgment evidence that the SoftPaq or FDCs in their personal computers caused "damage" that "modifies, impairs, or potentially modifies or impairs, the medical examination, diagnosis, treatment, or care of one or more individuals." 18 U.S.C. § 1030(e)(8)(B).[22] Furthermore, Plaintiffs have produced no summary judgment evidence that the SoftPaq or FDCs in their personal computers caused "damage" that "threatens public health or safety." 18 U.S.C. § 1030(e)(8)(D). Instead, Plaintiffs' deposition testimony confirms that Plaintiffs used their personal computers primarily for home use, such as keeping business records, internet access, e-mail, computer games, and word processing. (*See* Thurmond Dep. at 41:24–42:20; LaPray Dep. at 91:13–92:3; T. Wilson Dep. at 28:12–30:24; Owens Dep. at 80:3–9.) Therefore, Plaintiffs' only remaining "damage" alternative is section 1030(e)(8)(A), which requires loss of at least $5,000.

Subsection 1030(e)(8)(A) applies to "damage" that "causes loss aggregating at least $5,000 in value during any 1–year period to one or more individuals." 18 U.S.C. § 1030(e)(8)(A). The method of ag-

---

**19.** Plaintiff Owens testified she personally never experienced a problem with her computer other than the computer "freezing up and running slow." (Owens Dep. at 48:20–23.) This testimony suggests an "impairment to the availability" of Plaintiffs Owens' computer, but is not evidence that her computer failed "to maintain data in a protected state." *Shurgard,* 119 F.Supp.2d at 1125.

**20.** Interestingly, Plaintiff LaPray cannot remember the length of the motion; the nature of the motion; the court in which the motion was filed; or who actually signed the motion. (LaPray Dep. at 54:8–24.)

**21.** Plaintiffs explicitly deny any claim for consequential damages as a result of actual loss or corruption of data. (Doc. No. 353 at 15.)

Therefore, section 1030(e)(8)(C) is inapplicable.

**22.** Plaintiff Wilson testified that his wife used their computer for entering medical transcriptions. "She does some stuff for PTA; and also, she does some medical transcription stuff she uses it for." (T. Wilson Dep. at 29:2–4.) One might argue that Plaintiff Wilson's testimony raises an issue of fact on "damage" as defined under 18 U.S.C. § 1030(e)(8)(B). However, upon further inquiry, the Court learned that Plaintiff Wilson's wife, Rachel Wilson, typed medical transcriptions for her boss who happens to be an attorney. (*See* R. Wilson Dep. at 9:21–23 and 40:20–45:8.) Not exactly a modification or impairment to medical treatment, evaluation, diagnosis, or care.

gregating $5,000 is at issue in this case. Compaq argues Plaintiffs cannot demonstrate an "impairment to . . . a system" in the threshold amount of $5,000. (*See* Doc. No. 389 at 40.) Plaintiffs, on the other hand, contend that the statute allows aggregation of "one or more individuals." (*See* Doc. No. 470 at 38.) Unfortunately, the CFAA and case law provide little, if any, guidance on calculating the $5,000 requirement under 18 U.S.C. § 1030(e)(8)(A).

■ Plaintiffs argue that the definition allows aggregation of "damage" to "one or more individuals," and not just the "damage" to an individual plaintiff. (*Id.*) According to Plaintiffs' interpretation of section 1030(e)(8)(A), "no one can bring a civil action, unless the defendant has caused an aggregate to one or more persons. If the defendant causes such damage, then any injured person may bring a cause of action to recover his or her damages or loss, even if, his or her part, is less than the $5,000 aggregate damage caused by the defendant." (*Id.*) Plaintiffs contend that the sale of millions of allegedly defective computers, to millions of consumers, can be aggregated to satisfy the requisite $5,000 minimum. (*See id.*) To support their contention, Plaintiffs offer evidence that Compaq sold at least 1.7 million computers nationwide that contain allegedly defective microcode. (*See id.*, Ex. 217–25.) Plaintiffs submit that "[t]he minimum per unit damage times the number of affected computers clearly surpasses the $5,000 aggregate threshold." The Court disagrees.

First, Plaintiffs' interpretation wrongfully assumes the existence of a certified class. Where, as here, there has been no certification, the Court treats the case as one brought by Plaintiffs individually, not as members of a putative class. *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 n. 5 (5th Cir.1994); *Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405,

407 (5th Cir.1993). Moreover, the Supreme Court admonishes that "even named plaintiffs who represent a class 'must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (dismissing class action complaint for lack of standing) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (citations omitted)) (emphasis added). Accordingly, the Court will not consider any purported damage to unnamed class members in its summary judgment determination.

■ Second, the plain language of section 1030(a)(5)(A) requires "damage" to "*a* protected computer." 18 U.S.C. § 1030(a)(5)(A) (emphasis added). As the emphasized language indicates, the $5,000 aggregated loss must be to *a* computer. Section 1030(e)(1) defines "computer" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communication facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1). There is no question Plaintiffs own a computer as defined under the CFAA. Instead, the question remains whether Plaintiffs can aggregate the "damage" to each separate computer to meet the $5,000 threshold?

As Attorney General Janet Reno recently explained to a congressional subcommittee considering amending 18 U.S.C. § 1030(a)(5)(A):

We also need to consider additional tools to locate and identify cybercriminals. For example, we may need to strengthen the Computer Fraud and Abuse Act by closing a loophole that allows comput-

er hacker who have caused a *large amount of damage to a network of computers to escape punishment if no individual computer sustained over $5,000 worth of damage.*

*Hearing Before the Subcomm. on Commerce, Justice and State; Judiciary and Related Agencies of the Senate Comm. on Appropriations,* 106th Cong. (2000) (Statement of Janet Reno Attorney General of the United States, "Cybercrime"), *available at* 2000 WL 11068228, at *7 (emphasis added). Similarly, when questioned on this issue, Deputy Attorney General, Eric Holder also acknowledged that, under section 1030(a)(5)(A) the damage must be incurred by a single protected computer:

Sen. Thurmond: Mr. Holder, as you know, to violate the Computer Fraud and Abuse Act, perpetrators must cause over $5,000 in damage to *an individual computer.* Has this standard for damages, and the actual definition of 'damages,' caused problems in prosecutions? Mr. Holder: Yeah, I think there is a potential problem there.

*Internet Denial of Service Attacks and Federal Response: Joint Hearing of Crime Subcomm. of the House Judiciary Comm. and the Criminal Justice Oversight Comm. of the Sen. Judiciary Comm.,* 106th Cong. (2000) (Testimony of Eric Holder, Esq., United States Deputy Attorney General, Dept. of Justice) (emphasis added). The Justice Department's understanding of the statute suggests "damage" must be to an individual computer. Plaintiffs interpretation allows aggregation of loss caused by a "transmission" to more than one computer. However, the language of 18 U.S.C. § 1030(a)(5)(A) is unambiguous. A violation of section 1030(a)(5)(A) requires transmission "to *a* protected computer" that causes "damage." 18 U.S.C. § 1030(a)(5)(A) (emphasis added). If Congress intended otherwise, it would have provided for either transmis-

sion to " protected computers;" transmission to one or more "protected computers;" or the transmission to all "protected computers." This is not to say that the computer itself must incur "damage" equal to $5,000 as a result of the transmission. Rather, the transmission to a computer must cause loss totaling at least $5,000. For instances, if the defective FDC in Plaintiffs' computers corrupted $5,000 worth of data, then Plaintiffs would meet the statutory minimum. Stated differently, no one can bring a cause of action unless the defendant causes an aggregate of $5,000 "damage" to a protected computer. If defendant causes such damage, then any injured person may bring a claim even if, his or her own "damage," is less than $5,000. Accordingly, Plaintiffs must offer summary judgment evidence of a transmission to a computer that caused loss of at least $5,000.

In this case, Plaintiffs' claims are expressly limited to monetary damages "equal to the cost of repair, replacement, or a refund of the purchase price, and the cost of investigating, analyzing, and dealing with [Compaq's] prohibited transmission of the FDC microcode." (Doc. No. 353 at 20.) Even if Plaintiffs received full refund of the purchase price paid, they still would not meet the $5,000 threshold. (*See* Thurmond Dep. at 57:18–25 (total cost of computer was approximately $1,500); La-Pray Dep. at 33:5–12 (total cost of computers was between $1,100 and $1,200); T. Wilson Dep. at 24:6–25:14 (total cost after rebate was approximately $900); Bart Owens Dep. at 20:6 (total cost of computer was "around $1,200").) Additionally, the individual costs of repairing Plaintiffs' computers does not satisfy the $5,000 minimum. Plaintiffs' economic expert, Dr. Rajendra K. Srivastava, testified that "[t]he cost of repairing the defective FDCs (and the motherboard) will be the cost of materials (the motherboard with embedded components, including the FDC) and la-

bor." (Srivastava Decl. ¶ 2 at 2–3.) According to Dr. Srivastava's best estimate, the maximum repair costs (material and labor) is $500–$600 per computer. (*See id.*)

■ Finally, Plaintiffs argue that the expenses attributed to investigating and analyzing the allegedly defective FDCs "easily" satisfy the $5,000 obligation under § 1030(e)(8)(A). (*See* Doc. No. 470 at 39.) To support their position, Plaintiffs cite *United States v. Middleton*, 231 F.3d 1207, 1207 (9th Cir.2000). In *Middleton*, the defendant was arrested and charged with a violation of 18 U.S.C. § 1030(a)(5)(A).[23] *See id.* at 1209. The defendant filed a motion for acquittal, arguing that the government failed to prove at least $5,000 in damages. *See id.* At trial, the district court instructed the jury on "damage" under 18 U.S.C. § 1030(e)(8)(A), and allowed jurors to consider "what measures were *reasonably necessary to restore* the data, program, system, or information that you find was damaged or what measures were *reasonably necessary to resecure* the data, program, system, or information from further damage." *Id.* at 1213 (emphasis added). On appeal, the defendant argued that the district court's instruction might lead the jury to believe that it could consider the cost of "creating a better or more secure system." *Id.* Upon review, the Ninth Circuit noted that the district court's instruction "logically exclude[d] any costs that the jury believed were excessive, as well as any costs that would merely create an improved computer system unrelated to preventing further damage resulting from Defendant's conduct." *Id.*[24]

Here, Plaintiffs suggest *Middleton* applies to the costs of hiring their technical expert, Dr. W. Udo Pooch. (*See* Doc. No. 470 at 39.) "The costs incurred by plaintiffs with Dr. Pooch, alone, would meet the $5,000 threshold, if a threshold is required." (*Id.*) Plaintiffs urge the Court to consider such costs when calculating "damage" under 18 U.S.C. § 1030(e)(8). (*See id.*) Plaintiffs submit the following summary judgment evidence: "Experts were retained by Plaintiffs to investigate and analyze the problem with the FDCs in their computers, and over $100,000 was incurred in this investigation." (*See id.*, Ex. 227.)[25] Plaintiffs maintain that these expenses, alone, satisfy 18 U.S.C. § 1030(e)(8). (*Id.*) The Court disagrees.

In *Middleton*, the district court's jury instruction focused on measures "reasonably necessary" to "restore" and "resecure" damaged "data, program[s], system[s], or information." *Middleton*, 231 F.3d at 1213. Furthermore, the holding in *Middleton* addressed loss that was a "natural and foreseeable result" of any damage. *Id.* Unlike the outside consultant hired in *Middleton*, the "outside consultant" in this case, Dr. Pooch, was retained by Plaintiffs solely in preparation of litigation. (*See* Pooch Dep. at 5:17–6:2.) Moreover, Plaintiffs have offered no summary judgment evidence that they personally incurred the costs of retaining Dr. Pooch.[26]

23. Defendant, an ex-employee of Slip.net, accessed the computer responsible for Slip.net's internal administrative functions. Once inside Slip.net's system, defendant altered administrative passwords, reconfigured the system's registry, deleted internal databases, and eliminated the entire billing system. *Middleton*, 231 F.3d at 1209.

24. Repair to the Slip.net system included restoring access to the computer system, assigning new passwords, reloading the billing software, and recreating the deleted databases. *See id.*

25. Plaintiffs suggest Dr. Pooch was hired as an outside consultant like the one hired in *Middleton*. (Doc. No. 470 at 39.)

26. The Court will not consider the costs incurred by Plaintiffs' attorneys related to Dr. Pooch.

The costs of retaining legal experts is not reasonably necessary to restore or resecure Plaintiffs' computers, and therefore, is not within the scope intended by the Ninth Circuit in *Middleton*. The Court is unpersuaded by Plaintiffs' interpretation of *Middleton*, and refuses to apply the costs of retaining Dr. Pooch in determining Plaintiffs' "damage."

For the reasons stated above, the Court finds that Plaintiffs have not come forward with sufficient evidence of "damage" to survive summary judgment on their individual CFAA claims. Therefore, Compaq is entitled to judgment as a matter of law.

**C. Class Representation**

■ Plaintiffs come before this Court as proposed representatives of a nationwide class of computer owners who allegedly suffer damages as a result of infected FDC microcode. (Doc. No. 425). The Court is aware that a determination of whether a class meets the requirements of FED. R. CIV. P. 23 must be performed separately from the determination of the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, nothing in *Eisen* prohibits the Court from summarily disposing of Plaintiffs' individual claims before certification. *See Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir.1998). Likewise, "[t]here is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper . . . Rule 56 motion for summary judgment" prior to resolving the issue of class certification. *Lorber v. Beebe*, 407 F.Supp. 279, 291 n. 11 (S.D.N.Y.1975). Thus, the Court limits its summary judgment determination to the individual claims of Charles Thurmond, Hal Lapray, Tracy D. Wilson, Jr., and Alisha Seale Owens.

Notwithstanding, the Court has great discretion in determining whether to certify a class. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir.1999). "[A] district court's decision to certify a class [will be reversed] only upon a showing that the court abused its discretion . . . or . . . applied incorrect legal standards." *Id.* (citing *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471–72 (5th Cir.1986)); *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1104–05 (5th Cir.1993). Furthermore, Federal Rule of Civil Procedure 23 instructs the Court to make a determination on class certification "as soon as practicable." FED. R. CIV. P. 23(c)(1).

To maintain a class action, a proposed representative must satisfy the prerequisites of Rule 23. FED. R. CIV. P. 23(a). In particular, the proposed representative must fairly and adequately protect the members of the class. FED. R. CIV. P. 23(a)(4). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Furthermore, the Supreme Court has repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citation omitted)).

The Court doubts whether Charles Thurmond, Hal LaPray, Tracy D. Wilson, Jr., Alisha Seale Owens, or anyone similarly situated could satisfy Rule 23(a)(4). This is not to say that a class cannot be certified in this instance.[27] Rather, Plaintiffs must come forward with a representative who can "fairly and adequately protect the interests of the class." *See East Texas Motor Freight Sys.*, 431 U.S. at 403, 97 S.Ct. 1891 (holding that the Court of Appeals had "plainly erred in declaring a class action" when at the time the class was certified it was clear that the named plaintiffs were not adequate representatives).[28] For a proposed representative to bridge the "adequacy gap" in this case, he or she must demonstrate a substantive violation of 18 U.S.C. § 1030(a)(5)(A), including evidence of requisite "damage."

### VI. Conclusion

Based on the summary judgment evidence presented, and the reasons set out above, the Court concludes that no genuine issue of material fact exists concerning "damage" as defined by 18 U.S.C. § 1030(e)(8). Without sufficient evidence of "damage," Charles Thurmond, Hal LaPray, Tracy D. Wilson, Jr., and Alisha Seale Owens cannot withstand summary judgement on their civil claim under 18 U.S.C. § 1030(g).

Therefore, the Court **GRANTS** *Defendant Compaq Computer Corporation's Motion for Summary Judgment on Section 1030 Damages* [389], and **DISMISS-ES** Plaintiffs' civil action under 18 U.S.C. § 1030(g) for failure to prove an essential element of their claim. In light of the foregoing, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and **DISMISS-ES** those claims pursuant to Title 28 U.S.C. § 1367(c) without prejudice for re-filing in the appropriate forum.[29] All motions not previously ruled upon are **DE-NIED AS MOOT.** The parties shall bear their own costs and expenses.

**SO ORDERED.**

---

27. Indeed, this Court certified a settlement class action in a similar lawsuit. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942 (E.D.Tex.2000) (finding the class settlement agreement "fair, adequate, and reasonable.").

28. The Supreme Court noted that "a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives." *Id.* at 406, n. 12, 97 S.Ct. 1891.

29. *Parker & Parsley Pet. Co. v. Dresser Indus. Inc.*, 972 F.2d 580, 585 (5th Cir.1992) (holding that if a court dismisses a party's federal claims before trial, then the state law claims should be dismissed or remanded as appropriate).