**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN P. BURNS,

    Defendant - Appellant.

No. 14-8072

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:14-CR-00142-ABJ-1)**
_____

Grant Russell Smith, Research and Writing Specialist (Virginia L. Grady, Federal Public Defender, and Daniel G. Blythe, Assistant Federal Public Defender, with him on the briefs), Cheyenne, Wyoming for Defendant-Appellant.

Thomas Szott, Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.
_____

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this direct criminal appeal, Defendant-Appellant Steven Burns challenges the amount of restitution that the district court ordered him to pay. Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM.

# I. BACKGROUND

Burns, a custodian at the Rock Springs, Wyoming post office, pled guilty to one count of possessing stolen mail in violation of 18 U.S.C. § 1708. In pleading guilty, Burns admitted that from December 1, 2013, through January 25, 2014, he possessed letters, packages, mail, and articles and things contained therein, that had been stolen from post office boxes in the Rock Springs Post Office, knowing that those items had been stolen. The district court sentenced Burns to one year probation and ordered him to pay $3,090.58 in restitution under the Mandatory Victims' Rights Act ("MVRA"), 18 U.S.C. §§ 3663A, 3664. Burns appeals, challenging the restitution order.[1]

# II. DISCUSSION

Burns asserts that the restitution order must be vacated, for two reasons which we reject.

## A. The district court did not clearly err in finding that Burns took five specific pieces of mail

Burns first argues that the district court clearly erred in finding that he took all of the items on which the district court based the amount of restitution. The district court based that amount, $3,090.58, on its finding that Burns possessed forty-seven specific pieces of stolen mail. Burns denied possessing five of those forty-seven items: prescription medication ($1,361.60); a National Hockey League hooded

---

[1] We GRANT the Government's motion to seal its certificate listing the names of all parties who are not in the caption of the notice of appeal but who have a financial interest in the outcome of this litigation. See 10th Cir. R. 46.1(D)(1), (2).

sweatshirt ($150.94); a camera, case, and disc ($67); silicon carbide for polishing metal ($38); and an Ebay android tablet ($15). Following an evidentiary hearing, the district court found that the Government had met its burden of proving, by a preponderance of the evidence, that Burns took the five disputed items. See 18 U.S.C. § 3664(e); see also id. at § 3663A(d). That finding was not clearly erroneous. See United States v. Kalu, 791 F.3d 1194, 1213 (10th Cir. 2015) (reviewing sentencing court's factual finding underlying MVRA restitution award for clear error).

The Government presented sufficient evidence to support the district court's finding that it was more likely than not that Burns took the five disputed items. That evidence, briefly summarized here and viewed in the light most favorable to the district court's determination, see United States v. Dewberry, 790 F.3d 1022, 1034 (10th Cir. 2015), included the following: Burns admitted to taking letters and packages from Rock Springs post office boxes from December 1, 2013, through early January 2014. Burns told a postal investigator that "he carried out the thefts while he was cleaning the post office without supervision." (Doc. 19 at 5.) Burns explained that he would take letters from post office boxes, hiding the letters in his pockets, and that he would take parcels from carts located near the post office boxes, hiding the stolen parcels in an empty post office box until he could retrieve these parcels from the customer-lobby side of the boxes. Burns further explained that when he later opened these stolen letters and packages, he would keep only gift cards and discard the rest of the items. Although he could not tell the postal investigator exactly what

3

items he stole, Burns guessed that he had taken approximately twenty parcels and fifty letters. At sentencing, he did not dispute that he took forty-two of the forty-seven specific items on which restitution was based, totaling $1,458.04. Once postal officials discovered Burns' thefts and suspended him, reports of mail missing from Rock Springs post office boxes ceased.

Specifically as to the five disputed items, the evidence, viewed in the light most favorable to the district court's determination, see Dewberry, 790 F.3d at 1034, indicated that postal customers ordered these five items to be delivered to Rock Springs post office boxes during the same time period that Burns admitted stealing mail.[2] The customers never received these items. This evidence was sufficient to support the district court's finding that Burns more likely than not took the five disputed items.

Burns' speculation to the contrary—that maybe someone in another postal facility took these five items; maybe these five items never reached the Rock Springs post office; maybe someone else who worked in the Rock Springs post office took these five items; maybe the five items did not fit in a post office box and, if so,

_____

[2] Postal Agent Mitchell testified that he began investigating these mail thefts after the Rock Springs Postmaster received a number of complaints about mail missing from post boxes. The agent also testified, however, that some of these complaints may have involved mail that was to be delivered to homes, rather than to post office boxes, though most of the complaints involved mail addressed to post boxes. But, according to Agent Mitchell, the five disputed items were to be delivered to post office boxes: "Q. [A]ll of these items that we have been discussing [they had just been discussing the five disputed items] were anticipated to have arrived either in December of 2013 or January of 2014 at P.O. boxes at the Rock Springs post office? A. Yes." (Sent. tr. at 24.)

maybe the oversized packages were locked away where Burns could not access them—is unavailing. See Niemi v. Lasshofer, 770 F.3d 1331, 1356 (10th Cir. 2014) (declining to rely upon speculation to determine that district court's factual finding was clearly erroneous); cf. United States v. Winder, 557 F.3d 1129, 1137-38 (10th Cir. 2009) (stating, in holding there was sufficient evidence to support criminal conviction, that "the Government . . . need not disprove every other reasonable theory of the case"); United States v. Horn, 946 F.2d 738, 743 (10th Cir. 1991) (stating, in holding there was sufficient evidence to support criminal conviction, that "the prosecution need not eliminate every hypothesis except guilt beyond a reasonable doubt").[3]

## B. Apprendi[4] does not require a jury to find, beyond a reasonable doubt, facts underlying a restitution award

Burns next argues that the restitution order must be vacated because the district court, rather than a jury, made the factual findings underlying the restitution order. Burns contends that the Supreme Court's Apprendi line of cases requires that a jury find, beyond a reasonable doubt, the facts underlying a restitution award. Burns concedes that, because he did not make this argument to the district court, our review is for plain error. Burns further concedes that existing Tenth Circuit

---

[3] Although Burns speculates that some of the five disputed items were too big to fit into a post office box and, therefore, he could not have taken them, Burns told Postal Agent Mitchell that he, Burns, had taken and thrown away "a quilted blanket" (Doc. 19 at 5), which would arguably have been bigger than any of the five disputed items. (There is no evidence as to the exact size of any of the five disputed items, or the quilt, nor evidence that Burns could not have accessed oversized items.)

[4] Apprendi v. New Jersey, 530 U.S. 466 (2000).

precedent, which treats restitution as compensatory rather than punitive, forecloses applying Apprendi's rule of criminal law. See United States v. Kieffer, 596 F. App'x 653, 663-64 (10th Cir. 2014) (unpublished) (holding Apprendi does not apply to restitution under the MVRA because it is not a criminal penalty), cert. denied, 135 S. Ct. 2825 (2015). Burns, therefore, claims to be raising this Apprendi issue now "to preserve" that argument "for further review." (Aplt. Br. at 14.)

The Tenth Circuit has previously held that restitution "does not inflict criminal punishment, and thus is not punitive." United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007); see also United States v. Wolfe, 701 F.3d 1206, 1216-17 (7th Cir. 2012); United States v. Millot, 433 F.3d 1057, 1062 (8th Cir. 2006). Burns suggests that the Tenth Circuit's stance is no longer viable after the Supreme Court stated, in Paroline v. United States, that "[t]he primary goal of restitution is remedial or compensatory, but it also serves punitive purposes." 134 S. Ct. 1710, 1726 (2014) (citation omitted; addressing how to calculate restitution that possessor of child pornography owes child pornography victim under the Violence Against Women Act).[5] See United States v. Ferdman, 779 F.3d 1129, 1132 n.1 (10th Cir. 2015) (stating that Paroline's "statement regarding the general nature of criminal restitution calls into question our view that the MVRA lacks a penal element").

---

[5] Paroline, 134 S. Ct. at 1726, relied upon an earlier Supreme Court case, Pasquantino v. United States, 544 U.S. 349, 365 (2005) (stating that "[t]he purpose of awarding restitution in this action is . . . to mete out appropriate criminal punishment"), which the Court decided before the Tenth Circuit's Serawop decision.

6

Assuming, without deciding, that Apprendi could apply to restitution because it serves both compensatory and punitive purposes,[6] we nevertheless reject Burns' assertion that Apprendi requires a jury to find the facts underlying a restitution order. The Apprendi line of cases requires a jury to find, beyond a reasonable doubt, any fact that either increases a sentence beyond the statutory maximum available for his offense of conviction or increases a mandatory minimum sentence. See United States v. Zar, 790 F.3d 1036, 1054-55 (10th Cir. 2015) (citing Supreme Court cases). But there is no "statutory maximum" amount of restitution that a sentencing court can exceed in a given case. Instead, the MVRA simply requires a sentencing court to order a defendant to pay restitution to compensate the victims of the defendant's crimes for their losses. See 18 U.S.C. § 3663A(a)(1), (b). The sentencing court has no authority to impose restitution in excess of the victims' losses. See United States v. Griffith, 584 F.3d 1004, 1019 (10th Cir. 2009). Apprendi's rule, therefore, has no application to restitution.

Other circuits have rejected applying Apprendi to restitution orders for similar reasons. See United States v. Bengis, 783 F.3d 407, 411-13 (2d Cir. 2015) (agreeing with Fourth and Ninth Circuits); United States v. Rosbottom, 763 F.3d 408, 420 (5th Cir. 2014), cert. denied, 135 S. Ct. 985, 989 (2015); United States v. Lay, 612 F.3d 440, 448 (6th Cir. 2010); United States v. Milkiewicz, 470 F.3d 390, 403-04 (1st Cir.

---

[6] Although a panel of this court cannot overrule a prior panel's decision, we can consider whether an intervening Supreme Court decision has overruled earlier Tenth Circuit case law. See United States v. White, 782 F.3d 1118, 1123 n.2 (10th Cir. 2015). But, as we explain, we do not need to decide here whether Paroline has overruled our Serawop line of cases.

2006) (agreeing with case law from, e.g., Third and Eleventh Circuits); see also

United States v. Bonner, 522 F.3d 804, 807 (7th Cir. 2008) (noting, in dicta, that

even if, contrary to Seventh Circuit precedent, restitution was a criminal punishment,

Apprendi would not apply).[7]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order requiring

Burns to pay $3,090.58 in restitution. And we GRANT the Government's motion to

seal its "Certificate of Interested Parties."

---

[7] Burns incorrectly suggests that the First and Eighth Circuits have held that Apprendi applies to restitution orders. See United States v. Ziskind, 471 F.3d 266, 269 (1st Cir. 2006) (rejecting argument that Apprendi and its progeny apply to restitution); United States v. Ross, 279 F.3d 600, 608-10 (8th Cir. 2002) (holding that, even if Apprendi applied to restitution orders, the defendant would not be entitled to relief in that case).

8